## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| KWIK-WAY PRODUCTS, INC., | ) | |
| | ) | Bankruptcy No. 08-00362 |
| Debtor. | ) | |

## ORDER RE: MOTION FOR ORDER TO SHOW CAUSE (Doc. 241); MOTION FOR SANCTIONS (Doc. 268)

This case came before the undersigned on November 6, 2012 for hearing on the captioned matters.   Attorney John Titler appeared for Debtor Kwik-Way Products, Inc.   Attorney Kevin H. Collins appeared for Bank of America, N.A. ("the Bank").   After the presentation of evidence and argument, the Court took the matter under advisement.   The time for filing briefs has now passed and this matter is ready for resolution.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

This case was closed on July 23, 2009 and reopened by Debtor on January 11, 2012.   Along with the Motion to Reopen, Debtor filed a Motion for Order to Show Cause for Violation of Terms of Chapter 11 Plan and Sanctions.   It asserts Bank of America violated the confirmed Plan by improperly filing and continuing UCC liens post-confirmation.   Debtor argues the existence of these liens impaired its ability to obtain financing.   The Motion seeks an order requiring the Bank to release all liens, except one remaining on machinery and equipment, and requests damages and costs. Debtor also requests that plan payments to the Bank be put on hold for a period of time similar to that during which the Bank failed to release its liens.

On September 24, 2012, the Bank filed a Motion for Sanctions.   It asserts Debtor failed to follow Rule 9011 procedures in filing the Motion for Order to Show Cause.   The Bank argues the allegations of the Motion for Show Cause are without basis in law or fact.   It asserts Debtor made numerous misrepresentations under oath in interrogatory answers and Debtor's failure to receive financing was not based on the Bank's unreleased security interests in prepetition assets.   The Bank seeks attorney fees as sanctions against Debtor.

## FINDINGS OF FACT

Debtor's Chapter 11 plan was confirmed on February 23, 2009.   The plan provides that Bank of America would retain a lien only on specific machinery and equipment, not on all of Debtor's personal property.   In January 2010, David Parks, President and CEO of Debtor discovered that the Bank had not properly released its UCC liens as required by the confirmed Plan.   He sent a letter to the Bank's counsel requesting UCC releases from the Bank.   Mr. Parks later asked Debtor's attorney to follow up with the Bank's attorney.

In late 2011, Mr. Parks sought financing for Debtor through Guaranty Bank. He testified that the Bank's liens became a real obstacle at that point.   Mr. Parks testified that Debtor's largest supplier also starting asking for cash in advance based on Debtor's Dunn & Bradstreet score which is affected by the amount of liens outstanding and impacted by the Bank's failure to release the liens.

After failing to receive financing from Guaranty Bank, Mr. Parks contacted Debtor's attorney who made a request of the Bank, but the Bank failed to respond. At that point, Debtor filed the Motion to Reopen and Motion to Show Cause.   The Bank filed releases of the liens almost immediately, on January 17, 2012, after

2

Debtor reopened the case on January 11, 2012.   Subsequently, Guaranty Bank provided Debtor with financing.

At the hearing, the Bank questioned whether Debtor's assignment or sale of receivables to TCI rather than the unreleased liens was the primary reason for its failure to gain financing from Guaranty Bank.   The Bank pointed to deposition testimony of a loan officer of Guaranty Bank, David Lodge, to that effect.   <u>See</u> Ex. R.   Mr. Parks denied the Bank's assertion.   He stated that Mr. Lodge was not on the loan committee which considered Debtor's financing, but Harold Becker and Robert Becker were.   Mr. Parks testified that Robert Becker explained to him why they wouldn't give Debtor the loan at the end of 2011.

Debtor's Exhibit 2 sets out attorney fees and bankruptcy fees to the date of the hearing which it requests as sanctions.   Attorney fees total $12,427.17. Bankruptcy fees include the $1,039 reopening fee and quarterly fees to the U.S. Trustee totaling $19,500.   The Court notes, however, that the actual reopening fee shown at Doc. 240 was $1,000.   Thus, total expenses Debtor requests as costs are $32,927.17.   Debtor no longer claims actual damages as sanctions, although it initially stated in an answer to interrogatories: "Over $4.6 mm of margin was lost due to lack of adequate capital."   Ex. N, p. 3.   Mr. Parks stated in testimony that Debtor had asked a consultant to put together a number and it was the only accounting available to use to answer the interrogatory.   He considered it a theoretical number and not worth pursuing.   Instead, Debtor seeks only out-of-pocket expenses, including the reopening fee, quarterly fees to the U.S. Trustee, and attorney fees.

In its brief, Debtor states that the initial hearing scheduled for January 19, 2012 "was continued for several months at the request of the Bank."   The Bank filed a Motion to continue on 1/17/12 in which Debtor concurred due to

3

unavailability of counsel.   The Bank's second Motion to continue, filed 2/16/12, requests an additional 90 days to prepare for hearing.   Debtor filed an objection to this Motion.   Subsequently, the parties reached an agreement to suspend Debtor's weekly debt payments during the continuance period and the Court granted a 60-day continuance.   On 4/13/12, the parties filed an Agreed Motion to continue and the Court set 8/31/12 as a discovery deadline and 9/21/12 as a telephonic trial-setting conference.   Trial was eventually set for 11/6/12.

## CONCLUSIONS OF LAW

The Bank is correct that Rule 9011 requires certain procedural steps be satisfied before a party is entitled to sanctions under that Rule.   Fed. R. Bankr. P. 9011(c)(1)(A).   The rule includes a 21-day "safe harbor" provision giving parties the opportunity to withdraw or correct challenged documents.   Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003) (denying sanctions where movant failed to comply with safe harbor provision of Rule 11).

In this case, however, Debtor has not based its request for sanctions on Rule 9011.   Rather, it seeks sanctions for the Bank's failure to comply with provisions of the confirmed Chapter 11 Plan.   "Once confirmed, a Chapter 11 plan acts as both a contract which binds the parties and as an order of the bankruptcy court."   JCB, Inc. v. Union Planters Bank, NA, 539 F.3d 862, 870 (8th Cir. 2008).   Courts have the authority to enforce orders through civil contempt proceedings and judicial sanctions.   In re Burnett, 455 B.R. 187, 195 (Bankr. E.D. Ark. 2011); see, e.g., In re CareMatrix Corp., 306 B.R. 478, 488 (Bankr. D. Del. 2004) (considering sanctions for violation of a Chapter 11 confirmation order); In re Wright, 461 B.R. 757, 762 (Bankr N.D. Iowa 2011) (sanctioning mortgage servicer for violation of Chapter 13 Plan).

4

## ANALYSIS

The Court finds David Parks' testimony credible.   Despite the Bank's assertions to the contrary, Debtor has proven that its attempt to obtain financing from Guaranty Bank was impeded by Bank of America's failure to release liens as required by the confirmed Chapter 11 Plan.   Debtor incurred expenses as a result of the Bank's actions.   The Court has authority to award expenses for the Bank's violation of the confirmed Chapter 11 Plan.

The expenses arising from the Bank's inaction include the fee to reopen the bankruptcy case of $1,000.   Further expenses include attorney fees and quarterly fees paid to the U.S. Trustee.   The Court will grant Debtor attorney fees and reimbursement of the quarterly fees to the extent that these proceedings were prolonged solely by conduct of the Bank.   By April 13, 2012, Debtor concurred in the Bank's requests for continuances.   As such, the delay in these proceedings cannot solely be attributed to the Bank.   Therefore, the Court will grant Debtor expenses for attorney fees incurred prior to May 1, 2012 and quarterly fees paid to the U.S. Trustee through the second quarter of 2012.   The quarterly fees amount to $13,000.   Fees incurred by Debtor for services by attorneys Tom Ochs and Rush Shortley, as set out on Exhibit 2, shall be awarded as expenses in the total amount of $3,083.20.   Attorney John Titler is directed to file an itemized statement of attorney fees, including a subtotal for fees incurred prior to May 1, 2012.

Debtor also requests that plan payments to the Bank be put on hold for a period of time similar to that during which the Bank failed to release its liens.   In April 2012, the Bank agreed to suspend monthly plan payments while this matter was pending.   After the hearing, the Court ordered Debtor to commence making

5

monthly payments immediately.   The Court declines to suspend Debtor's monthly payments to the Bank any further.

**WHEREFORE**, Debtor's Motion for Order to Show Cause for Violation of Terms of Chapter 11 Plan and Sanctions (Doc. 241) is GRANTED.

**FURTHER**, for violations of the confirmed plan, the Court awards expenses to Debtor, payable by the Bank of America, including the reopening fee, quarterly fees and attorney fees in the total amount of $17,083.20.

**FURTHER**, further attorney fees may be awarded after Attorney John Titler files an itemized statement of attorney fees, including a subtotal for fees incurred prior to May 1, 2012.

**FURTHER**, Debtor shall continue to make monthly plan payments to the Bank of America as previously ordered.

**FURTHER**, Bank of America's Motion for Sanctions (Doc. 268) is DENIED.

Dated and Entered:  December 28, 2012

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

6